UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL JOSHUA HENDERSON,

                Plaintiff,

    v.                                                    9:22-CV-0242 (LEK/ATB)

BRYAN POPP, et al.,

                Defendants.
_____

APPEARANCES:

MICHAEL JOSHUA HENDERSON
Plaintiff, Pro Se
06-A-5461
Wende Correctional Facility
P.O. Box 1187
Alden, NY 14004

ANDREW T. BAXTER
United States Magistrate Judge

**DECISION AND ORDER**

I.    **INTRODUCTION**

    Pro se plaintiff Michael Joshua Henderson commenced this action by filing a complaint asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"). By Decision and Order entered on May 12, 2022, the Honorable Lawrence E. Kahn granted plaintiff's IFP Application and, following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed certain of plaintiff's claims and

found that the following claims survived sua sponte review and required a response: (1) plaintiff's First Amendment retaliation claims against defendants McLenithan, Guyette, Worth, Popp, Hamel, Fraser, Officer Doe, and Jones; (2) plaintiff's Fourteenth Amendment substantive due process claims against defendants McLenithan, Guyette, Worth, Popp, Hamel, Fraser, Officer Doe, Jones, Scarlotta, and Officer Roe; (3) plaintiff's Fourteenth Amendment procedural due process claim against defendant Officer Doe; (4) plaintiff's Eighth Amendment failure to protect and excessive force claims against defendant Popp; (5) plaintiff's Section 1983 conspiracy claims against defendants Guyette, Worth, Popp, Hamel, Fraser, and Officer Doe; and (6) plaintiff's state law intentional infliction of emotional distress claims against defendants McLenithan, Guyette, Worth, Popp, Hamel, Fraser, and Jones. Dkt. No. 4 ("May 2022 Order"). Because service could not be effectuated on Captain Fraser, Officer Doe, and Officer Roe, the Court directed the Clerk of Court to send a copy of the complaint and May 2022 Order to the New York State Attorney General's Office and requested that the New York State Attorney General's Office, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997) (per curiam), attempt to ascertain the full names of these defendants. *Id*. at 49-50.

Presently before the Court are the following: (1) plaintiff's motion for appointment of counsel, Dkt. No. 7 ("Motion for Counsel"); (2) plaintiff's motion to proceed under a pseudonym and seal the docket, Dkt. No. 8 ("Motion to Seal"); (3) a status report filed by a representative from the New York State Attorney General's Office regarding Officers Doe and Roe, Dkt. No. 10 ("Status Report"); and (4) an unexecuted summons for defendant Ryan Worth and notification of his death, Dkt. No. 13 ("Unexecuted Summons").

## II.     MOTION FOR COUNSEL

It is well-settled that there is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Title 28 of United States Code Section 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion. In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination. *See id.* at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)); *Sawma v. Perales*, 895 F.2d 91, 95 (2d Cir. 1990). Among these are

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason ... why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61. None of these factors are controlling, however, and each case should be decided on its own facts. *Id*.

At this early stage of the litigation, it is difficult for the Court to assess the likely merits of plaintiff's claims. Indeed, the only facts upon which this Court may base its decision as to

3

whether plaintiff's claims may be of substance are those portions of his complaint wherein he states the facts surrounding his claims. Because plaintiff has not provided evidence, as opposed to mere allegations, relating to his Section 1983 claims, he has failed to meet the first requirement imposed by the Second Circuit relative to applications seeking appointment of pro bono counsel. *See Harmon v. Runyon*, No. 96-CV-6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997).

In addition, even if the Court were to assume that plaintiff's Section 1983 claims may be of substance, it does not appear that any of these claims present any overly complex issues. Moreover, the Court has no reason to infer from the current record that plaintiff is unable to investigate pertinent facts and present his case, particularly in light of the detailed nature of his pleading, which includes multiple claims that survived sua sponte review. Furthermore, in the event one or more of the named defendants answer the complaint, a Mandatory Pretrial Scheduling Order shall issue, which will direct the exchange of initial disclosures and likely help plaintiff frame the issues in the case and investigate the "crucial facts" without the need for counsel.

While it is possible, should this case proceed to a trial, that there will be conflicting evidence implicating the need for cross-examination, as is the case in many actions brought under Section 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995). Further, if this case proceeds to trial, it is highly probable that trial counsel will be appointed at the final pretrial conference. The Court is not aware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

4

In light of the foregoing, appointment of counsel is unwarranted at this time. Plaintiff may file another motion for appointment of counsel in the event he can demonstrate that, in light of <u>specific</u> changed circumstances, consideration of the above factors warrants granting the application.

### III.   MOTION TO SEAL THE DOCKET AND/OR USE A PSEUDONYM

#### A.   Request to Seal the Docket

It is well-settled that there exists a common-law right of access to judicial records. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) ("The common law right of public access to judicial documents is firmly rooted in our nation's history."); *United States v. Erie County*, 763 F.3d 235, 238-39 (2d Cir. 2014) ("The notion that the public should have access to the proceedings and documents of courts is integral to our system of government."); *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997); *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*") ("The common law right of public access to judicial documents is said to predate the Constitution."). It is also "well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)). The burden of demonstrating that case records should be sealed rests on the party seeking such action. *See, e.g., DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). Additionally, the Supreme Court has explained that "the decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner*

5

*Communications, Inc.*, 435 U.S. 589, 599 (1978) (citations omitted).

With respect to the common law right of access to judicial documents, the Second Circuit has articulated a three-step process for determining whether such documents should be sealed. First, a court must determine whether "the documents at issue are 'judicial documents'" to which the presumption of access attaches. *Lugosch*, 435 F.3d at 119 (quotation omitted). If so, the court must next determine the weight of the presumption of access. *Id*. "'[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Id*. (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*")); *see also Amodeo II*, 71 F.3d at 1048 (explaining the importance of "professional and public monitoring" of the judiciary to its "democratic control" and concluding that "[s]uch monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions").[1] Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it." *Lugosch*, 435 F.3d at 120 (quotations and citation omitted). "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and the privacy interests of those resisting disclosure." *Id*. (quotations and citation omitted).

In addition, in situations in which there exists a qualified First Amendment right of

---

[1] As the Second Circuit explained in *Lugosch*, "'[g]enerally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.'" 435 F.3d at 119 (quoting *Amodeo II*, 71 F.3d at 1049). For example, documents passed between the parties during the course of discovery are beyond the presumption's reach and "stand on a different footing than a motion filed by a party seeking action by the court, or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions." *Amodeo II*, 71 F.3d at 1050 (internal quotations, citations, and alterations omitted).

access to the judicial documents at issue, a court may only seal the documents "'if specific, on the record findings are made demonstrating the closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Lugosch*, 435 F.3d at 120 (quoting In re N.Y. Times Co., 828 F.2d 110, 116 (2d Cir. 1987)).  "'Broad and general findings by the trial court . . . are not sufficient to justify closure.'" *Id*. (quoting *In re N.Y. Times Co.*, 828 F.2d at 116).  "Examples of 'higher values' may include law enforcement interests, the privacy of innocent third parties, . . . and the attorney-client privilege[.]" *Mann v. New York State Ct. of Appeals*, No. 1:21-CV-49 (MAD/CFH), 2021 WL 1224011, at *3-4 (N.D.N.Y. Mar. 31, 2021) (internal quotation marks and citations omitted).

    Here, plaintiff requests that the Court seal the docket (and apparently all future filings), i.e., judicial documents, "because he is a continuous target of retaliation by corrections officers at every correctional facility he goes to, including the one he is in now," and was previously the victim of an inmate attack "provoked" by one of the named defendants in this case, as alleged in the complaint.  *See* Motion to Seal at 3-4, ¶¶ 5, 8.  While the Court is sensitive to plaintiff's concerns, he is no longer incarcerated at the facility where the alleged attack action occurred.  Moreover, the Motion to Seal does not identify any specific facts about this case that are private or sensitive in nature.  Nor does the Motion to Seal identify any specific threat that plaintiff has experienced as a result of this action, or any other action he previously commenced.[2]  In addition, plaintiff allegedly authored grievances regarding the wrongdoing detailed in the complaint, *see* Compl. at 2-9, which presumably identify him as the grievant, and which are not subject to judicial restriction.

---

[2] The Motion to Seal identifies three federal lawsuits filed by plaintiff between 2012 and 2018.  *See* Motion to Seal, ¶ 7.

In light of the foregoing, the Court finds that plaintiff has not met his burden of demonstrating that "the most compelling reasons" exist and dictate that the entire record in this action should be sealed from public view.  *See Lugosch*, 435 F.3d at 123 (quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)); *Doe v. Greiner*, 662 F. Supp. 2d 355, 361 (S.D.N.Y. 2009) (holding that plaintiff's "unsupported and uncorroborated naked assertion that he has worked as an informant and is now in danger is insufficient to set aside the public's interest in open court proceedings").[3]  Accordingly, plaintiff's request to seal the docket and all future filings is denied.

### B. Request to Use a Pseudonym

As a general rule, parties may not litigate their disputes anonymously.  "The people have a right to know who is using their courts."  *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 189 (2d Cir. 2008) (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)).  Thus, Rule 10(a) of the Federal Rules of Civil Procedure states that "[t]he title of the complaint must name all the parties."  Fed. R. Civ. P. 10(a).  "This requirement . . . serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly."  *Sealed Plaintiff,* 537 F.3d at 188-89.

At the same time, in certain "sensitive situations, some materials, including the names of parties, may be under judicial seal."  *In re New York Times Co. to Unseal Wiretap and Search Warrant Materials,* 577 F.3d 401, 410 n. 4 (2d Cir. 2009).  There are "a limited number of exceptions to the general requirement of disclosure of the names of parties, which permit plaintiffs to proceed anonymously."  *Sealed Plaintiff,* 537 F.3d at 189 (citation

---

[3] Plaintiff has also not identified (or filed) any documents that currently warrant sealing.

omitted). To decide whether a plaintiff may be allowed to prosecute an action using a pseudonym, "the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id.* In *Sealed Plaintiff,* the Second Circuit articulated a non-exhaustive list of ten factors courts should consider when faced with an application to proceed under a pseudonym:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature, (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties, (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity, (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age, (5) whether the suit is challenging the actions of the government or that of private parties, (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court, (7) whether the plaintiff's identity has thus far been kept confidential, (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity, (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities, and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 189-90 (citations omitted).

In the Motion to Seal, plaintiff states that he faces a risk of harm if he is not allowed to proceed under a pseudonym because he has historically experienced retaliatory treatment for the "hundreds, if not thousands, of grievance complaints" he has filed throughout his incarceration, and his known pursuit of this action will "only exacerbate [his] current situation, and put innocent non-parties, like those close to [him] or witnesses, at risk to be harmed as well." *See* Motion to Seal, ¶¶ 5-9.

Upon review of plaintiff's submission in light of the factors identified in *Sealed Plaintiff,*

9

and with due regard for plaintiff's status as a pro se litigant, the Court finds that he has not identified any specific risk to himself or any non-party that is sufficient to overcome the public's "right to know who is using their courts." *Sealed Plaintiff*, 537 F3d at 189 (quoting Doe, 112 F.3d at 872). In this regard, the Court finds that this action does not involve matters that are highly sensitive and of a personal nature. In addition, plaintiff's concern that corrections officials will retaliate against him as a result of his pursuit of this action is unsupported by any credible evidence, and largely, if not entirely, alleviated by the fact that he is no longer incarcerated at the facility where the named defendants are employed. Indeed, although plaintiff remains in the custody of the New York State Department of Corrections and Community Supervision, the Motion to Seal lacks any indication that he has been subjected to, or even threatened with, physical harm at any point in the more than two years since the claims in this action accrued. Furthermore, withholding plaintiff's identity will significantly hinder defendants' ability to defend the claims asserted against them, and interfere with the public interest in the litigation.

In light of the foregoing, plaintiff's request to proceed with this action by means of a pseudonym is denied.[4]

## IV. SERVICE

### A. Officer Roe and Officer Doe

The Status Report filed in response to the *Valentin* directive in the May 2022 Order indicates that "former Lieutenant Daniel Reynolds was the hearing officer at both (1)

---

[4] In the event plaintiff does not wish to pursue this action in his own name, he is encouraged to notify the Court in writing within thirty (30) days of the filing date of this Decision and Order and request dismissal of this action so as not to waste judicial resources.

Plaintiff's Tier II hearing on January 2, 2020 concerning the charge of phone program violation from a misbehavior report by Officer Guyette; and (2) Plaintiff's Tier II hearing that concluded on January 18, 2020 concerning the charges of refusing a direct order and facility correspondence violation from a misbehavior report by Officer Popp." *Id*. The Status Report also provides a service address for this official. *Id*.

      Plaintiff should review the submission. To the extent that plaintiff is able to identify Officer Doe and/or Officer Roe as Corrections Lieutenant Reynolds based on this submission and wishes to add this official as a defendant in this action, he must, within thirty (30) days of this Decision and Order, prepare an amended complaint which substitutes Corrections Lieutenant Reynolds for one or both of the unnamed defendant(s). In an effort to assist plaintiff in preparing an amended complaint, the Clerk shall send him a copy of his original complaint. In the event plaintiff seeks to substitute Corrections Lieutenant Reynolds for Officer Doe and/or Officer Roe without any further changes, he may do so by handwriting this official's name in place of the unnamed official(s) in the appropriate locations throughout the pleading. Once plaintiff has made these changes, captioned the document as his amended complaint, and signed and dated the proposed pleading, he should submit it to the Court for review.

      In the event plaintiff believes that Corrections Lieutenant Reynolds is not a proper party in this action, or that this official did not preside over the aforementioned disciplinary hearings despite the Status Report, he is advised that he must take reasonable steps to identify the remaining unnamed defendant(s) during discovery and, upon learning the identity of such official(s), amend his pleading to properly name him or her as a defendant and permit the timely service of process. If plaintiff does not wish to proceed with claims against

Corrections Lieutenant Reynolds, he should notify the Court within thirty (30) days.

### B.     Defendant Worth

The Unexecuted Summons for defendant Ryan Worth was returned to the Court with a notification that Mr. Worth is deceased. *See* Dkt. No. 13 at 2. Federal Rule of Civil Procedure 25(a) provides, in pertinent part, as follows

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1); *Steward v. City of N.Y.*, No. 04-CV-1508, 2007 WL 2693667, at *2-3 (E.D.N.Y. Sept. 10, 2007). Under this rule, in the event a timely motion for substitution is not made, dismissal of any claim against a deceased defendant, other than a public officer sued solely in his official capacity, is required. *See Steward*, 2007 WL 2693667, at *3 ("Rule 25(a)(1) thus makes clear that, after a party's death is suggested on the record, a motion for substitution must be made within ninety days or the court will be compelled to dismiss the action with respect to that party.").

Accordingly, plaintiff is notified that is he required to file a motion for substitution within ninety (90) days if he wishes to proceed with claims against defendant Worth's successor. In the event plaintiff does not wish to proceed against Mr. Worth's successor, he should notify the Court within thirty (30) days.

### V.     CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's motion for appointment of pro bono counsel (Dkt. No. 7) is

**DENIED without prejudice** to renew at a later stage in the proceedings as set forth above; and it is further

**ORDERED** that plaintiff's requests to seal the docket and future filings and/or proceed with this action by means of a pseudonym (Dkt. No. 8) are **DENIED**; and it is further

**ORDERED** that plaintiff is directed to review the Status Report (Dkt. No. 10) and Unexecuted Summons (Dkt. No. 13) and respond to those submissions as set forth above. Upon receipt of a response from plaintiff, the Clerk shall return this file to the Court for further review; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

Dated: June 27, 2022
Syracuse, NY

Andrew T. Baxter
U.S. Magistrate Judge