**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

MICHAEL J. HENDERSON,

                Plaintiff,

    -against-                         9:22-cv-0242 (AMN/MJK)

BRYAN POPP, *et al.*,

                    Defendants.

───────────────────────────────

**APPEARANCES:**                        **OF COUNSEL:**

**MICHAEL JOSHUA HENDERSON**
06-A-5461
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562
Plaintiff, *pro se*

**LETITIA JAMES**                        **ALEXANDRA L. GALUS, ESQ.**
Attorney General of the State of New York      Assistant Attorney General
The Capitol
Albany, NY 12224
Attorney for Defendant

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

On March 14, 2022, plaintiff *pro se* Michael Joshua Henderson ("Plaintiff"), an incarcerated individual in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this action pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. Plaintiff sought and was granted leave to proceed *in forma pauperis*. Dkt. Nos. 2 & 4. On July 27, 2022, Plaintiff filed a proposed amended complaint ("Amended Complaint"). *See*

Dkt. No. 18-1.  The Amended Complaint asserts various claims against Correction Officers Bryan

Popp, Austin McLenithan, Richard Guyette, Ryan Worth, Colin Fraser, and Laura Jones,

Correction Lieutenants Daniel Reynolds and F. Scarlotta, and Correction Sergeant Scott Hamel,

all based on allegations arising out of Plaintiff's detention at Great Meadow Correctional Facility

("Great Meadow").  Dkt. No. 20 at 1-2. In accordance with 28 U.S.C. § 1915(e)(2)(B) and 28

U.S.C. § 1915A(b), Senior United States District Judge Lawrence E. Kahn[1] reviewed the

sufficiency of the claims therein and permitted the filing of the Amended Complaint.  Dkt. Nos.

19, 20.  Judge Kahn determined that six claims included in the Amended Complaint survived initial

review and required a response.[2]  Judge Kahn dismissed all claims against Defendant Worth.  *Id.*

at 6.  Each remaining Defendant filed an answer, *see* Dkt. Nos. 29, 53, and the parties engaged in

discovery.

On April 3, 2024, Defendants filed a motion for summary judgment seeking dismissal of

the Amended Complaint with prejudice.  *See* Dkt. No. 59 (the "Motion").  The parties have fully

briefed the Motion.  See Dkt. Nos. 67, 69.  This matter was referred to United States Magistrate

Judge Mitchell J. Katz, who, on March 4, 2025, issued a Report-Recommendation and Order

("Report-Recommendation"), recommending that the Motion be granted as to Defendants Guyette,

McLenithan, Popp, Fraser, and Hamel, and denied as to the retaliation claim against Defendant

---

[1] This case was reassigned to the undersigned on January 19, 2023.  Dkt. No. 34.

[2] Those claims, assessed herein, are the following: (1) Plaintiff's First Amendment retaliation
claims against Defendants McLenithan, Guyette, Popp, Hamel, Fraser, Reynolds, and Jones; (2)
Plaintiff's Fourteenth Amendment substantive due process claims against Defendants
McLenithan, Guyette, Popp, Hamel, Fraser, Reynolds, Jones, and Scarlotta; (3) Plaintiff's
Fourteenth Amendment procedural due process claim against Defendant Reynolds; (4) Plaintiff's
Eighth Amendment failure-to-protect and excessive force claims against Defendant Popp; (5)
Plaintiff's Section 1983 conspiracy claims against Defendants Guyette, Popp, Hamel, Fraser, and
Reynolds; and (6) Plaintiff's intentional infliction of emotional distress claims against Defendants
McLenithan, Guyette, Popp, Hamel, Fraser, and Jones.  Dkt. No 19 at 4-5.

Jones.  *See* Dkt. No. 75.[3]  Magistrate Judge Katz also recommended that the Court schedule an

exhaustion hearing as to the remaining claim.  *Id.*  Magistrate Judge Katz advised that under 28

U.S.C. § 636(b)(1), the parties had fourteen days within which to file written objections and that

failure to object to the Report-Recommendation within fourteen days would preclude appellate

review.  *Id.* at 70.  Neither party filed timely objections, though Plaintiff requested an extension

of 120 days.  *See* Dkt. No. 76.[4]

For the reasons stated herein, the Court adopts the recommendations in the Report-

Recommendation.

## II.    STANDARD OF REVIEW

### A.  Summary Judgment

A court may grant a motion for summary judgment only if it determines that there is no

genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant

judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29,

36 (2d Cir. 1994) (citations omitted).  "The mere existence of a scintilla of evidence in support of

the plaintiff's position will be insufficient; there must be evidence on which the jury could

*reasonably* find for the plaintiff."  *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (emphasis in original).  In

---

[3] The Report-Recommendation's final recommendations appear to exclude Defendants Scarlotta and Reynolds.  Dkt. No. 75 at 69.  However, the substance of the Report-Recommendation confirms that Magistrate Judge Katz also recommends dismissing all claims against those Defendants.

[4] Plaintiff requests an opportunity to file objections within 120 days "if [this Court] hasn't already rendered a decision in [Plaintiff's] favor."  *Id.* at 2.  Given that one of Plaintiff's claims survives summary judgment pursuant to this Order adopting the Report-Recommendation, the Court finds it unnecessary to withhold its decision.  However, should Plaintiff choose to file objections to the Report-Recommendation within 45 days of the issuance of this Order, the Court will consider those objections and determine whether they warrant reconsideration of the adoption of the disputed portions of the Report-Recommendation.

other words, "a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). Moreover, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *See Chambers*, F.3d at 36-37 (quotation and other citation omitted). Any assessments of credibility and all choices between available inferences are matters to be left for a jury, not matters to be decided by the Court on summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (citing Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable factual inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing, *inter alia*, *Anderson*, 477 U.S. at 255).[5] Where a party is proceeding *pro se*, like here, the court must "read his supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). "However, a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

### B.  Review of Report-Recommendation

A district court reviews *de novo* those portions of a magistrate judge's report-recommendations that have been properly preserved with a specific objection.  28 U.S.C.

---

[5] Where, as here, the non-movant fails to appropriately dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n. 5 (2d Cir. 2003) (holding that not verifying in the record the assertions in a motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

§ 636(b)(1)(C).  "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.'"  *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)).  When a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322 (TJM)(DRH), 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted).  The Second Circuit has held that courts are obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education.  *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal . . .."  *Machicote v. Ercole*, No. 06 Civ. 13320 (DAB)(JCF), 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 1:22-cv-567 (BKS/CFH), 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022.  After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]."  28 U.S.C.

§ 636(b)(1)(C).

## III.    DISCUSSION

Because neither party has filed any objections to the Report-Recommendation, the Court reviews the Report-Recommendation for clear error.

### A.  Exhaustion of Administrative Remedies

Magistrate Judge Katz recommended that the Court hold an exhaustion hearing to determine if Plaintiff has properly exhausted his administrative remedies under the Prison Litigation Reform Act ("PLRA").  Dkt. No. 75 at 18-19 (citing *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) ("Exhaustion is mandatory—unexhausted claims may not be pursued in federal court.")).[6]  Plaintiff claims that he filed grievances with respect to all the claims alleged.  *Id.* at 20.  Magistrate Judge Katz identified various documents filed by Plaintiff which might suggest Plaintiff did, in fact, utilize the grievance process, and which Defendants have failed to explain.  *Id.* at 20-22.   Specifically, Plaintiff filed a document, without explanation, which appears to suggest he filed a grievance around June 18, 2020, just eleven days after he alleges Defendant Jones issued the disputed MBR.  *See* Dkt. No. 67-2 at 32.  Magistrate Judge Katz also noted the declaration of non-party Alexandria Cutler, filed by Defendants, which purports to describe the grievance process at Great Meadow and asserts that all of Plaintiff's claims are the proper subject of grievances except for the substantive due process claim against Defendant Scarlotta and the procedural due process claim against Defendant Reynolds.[7]  Ms. Cutler also declared that Plaintiff

---

[6] Pursuant to the below analysis, the Court will hold an exhaustion hearing only in relation to the sole remaining claim: the retaliation claim against Defendant Jones.

[7] Instead, the exhaustion requirement mandates that Plaintiff should have pursued administrative appeals of the disciplinary decisions upon which Plaintiff asserts claims against Defendants Reynolds and Scarlotta.  *See Beauvoir v. Smith*, No. 9:14-cv-1495 (MAD/DEP), 2017 WL 4271636, at *2 (N.D.N.Y. Sept. 26, 2017).

filed four grievances between January 2019 and February 2020. *Id.* at 23-24. Finally, records provided by non-party Rachel Seguin, an employee at Great Meadow, suggest that Plaintiff pursued two grievances to the highest level of administrative review during the January 2019 to February 2020 period, neither of which concerned the issues in the case, *id.* at 24, and that Plaintiff has taken six grievances to the highest level of administrative review at Great Meadows in total. *Id.* at 26. Based on these documents, the Report-Recommendation found that Plaintiff could have availed himself of the grievance and administrative appeals processes. However, the Report-Recommendation noted that Defendants overly restricted their review of Plaintiff's grievances and appeals at Great Meadow to January 2019 to February 2020, potentially omitting review of documents relevant to Plaintiff's First Amendment Retaliation claims.

The Court finds no clear error in this analysis.[8] Per the below, the sole remaining claim is the retaliation claim against Defendant Jones, and Plaintiff alleges Defendant Jones retaliated against him by filing a false misbehavior report ("MBR") on June 7, 2020. Dkt. No. 59-2 at 12. Any grievance related to the alleged June 7, 2020 retaliation would necessarily be filed after June 7, 2020. Given the restrictions applied by Defendant, the Court has no information or records regarding any grievances filed after February 2020, including the June 18, 2020 grievance

---

[8] In recommending an exhaustion hearing, Magistrate Judge Katz noted that the Defendant's restricted timeframe precluded information on the alleged grievance against Defendant Guyette, presumably filed before January 2019. Dkt. No. 75 at 30. Magistrate Judge Katz recommended a hearing because that grievance constitutes the alleged "protected activity" for many of Plaintiff's retaliation claims. *Id.* But what matters for purposes of exhaustion is whether a grievance has been filed based on the purportedly unlawful acts of the Defendants. *See Mitchell v. Chappius*, 750 F. Supp. 3d 123, 139 (W.D.N.Y. 2024) (assessing exhaustion in relation to a retaliation claim based on the alleged filing of a false MBR). Here, that would be the retaliation itself, not the alleged protected activity which prompted the retaliation. Thus, for purposes of exhaustion, it is any grievances which complain of Defendant Jones' retaliation that are relevant. As noted *infra* and elsewhere in the Report-Recommendation, Defendants' restricted timeframe precludes information about any such grievances, as well, so the Court adopts the recommendation to hold a hearing. *See* Dkt. No. 75 at 29.

mentioned in Plaintiff's supporting documents, and thus, this Court cannot yet determine whether Plaintiff has exhausted his administrative remedies on the sole remaining claim. Therefore, the Court adopts the Report-Recommendation's recommendation to hold an exhaustion hearing on the remaining issues.

### B.  Plaintiff's First Amendment Retaliation Claims

First, the Report-Recommendation recommended that Plaintiff's retaliation claim against Defendant McLenithan be dismissed for failure to demonstrate that Plaintiff's alleged protected activity (filing a grievance) was a substantial or motivating factor in the decision to enter a misbehavior report ("MBR") against Plaintiff. Dkt. No. 75 at 37. Magistrate Judge Katz found that because Plaintiff does not deny Defendant McLenithan's assertion that Plaintiff threatened him, and because Plaintiff was subsequently found guilty of that charge, Plaintiff has failed to identify any grounds upon which a reasonable jury could find that Plaintiff's prior grievances were a substantial or motivating factor. *Id.* The Court finds no clear error in this assessment.

Second, the Report-Recommendation recommended that the retaliation claim against Defendant Guyette be dismissed because Plaintiff has not demonstrated an adverse action. *Id.* at 41. This Court has previously found that the alleged adverse action, a MBR which resulted in counseling and a reprimand, is *de minimis* and does not constitute an adverse action. *Id.* (citing *McFadden v. Friedman*, No. 9:12–CV–0685 (GTS/CFH), 2015 WL 5603433, at *11 (N.D.N.Y. Aug. 13, 2015), *report recommendation adopted*, 2015 WL 5603433 (N.D.N.Y. Sept. 23, 2015)). Therefore, the Court finds no clear error in this determination.

Third, the Report-Recommendation recommended that the retaliation claims against Defendants Popp, Hamel, Fraser, and Reynolds be dismissed due to a failure to establish a causal link between the alleged protected activity (the filing of a grievance against Defendant Guyette)

and the alleged adverse action (removal from the library job program).   The Report-Recommendation explained that the failure to allege a specific time period for the grievance against Defendant Guyette, as well as the overwhelming weight of the evidence suggesting Plaintiff was removed from the library program as a result of misconduct, preclude a finding of a causal link.  Dkt. No. 75 at 46.  The Court finds no clear error.  *See Hart v. New York Univ. Hosp. Cent.*, No. 09 Civ. 5159, 2011 WL 4755368, at *8 (S.D.N.Y. Oct. 7, 2022) ("Plaintiff has not created a genuine issue of material fact by putting forth allegations that are contradicted by the overwhelming weight of the evidence.").

Fourth, the Report-Recommendation recommended that the individual retaliation claim against Defendant Popp based on allegations of an assault by another incarcerated individual be dismissed because of a lack specificity as to the protected activity.  The Report-Recommendation also found that a complete lack of evidence that Defendant Popp was aware of such grievance, that Plaintiff was attacked by any particular individual, and that Defendant Popp encouraged such an attack, beyond alleged hearsay statements from an unidentified individual, precluded the claim.  Dkt. No. 75 at 48.  The Court finds no clear error in this analysis.  *See Selvam v. Experian Info. Sols., Inc.*, 651 F. App'x 29, 31-32 (2d Cir. 2016) (the party opposing summary judgment "cannot rely on inadmissible hearsay in opposing a motion for summary judgment[] absent a showing that admissible evidence will be available at trial.") (citation omitted).

Finally, the Report-Recommendation recommended that the retaliation claim against Defendant Jones survive summary judgment because "Mr. Herne's affidavit and Plaintiff's sworn statement create issues of credibility concerning Defendant Jone's motive."  Dkt. No. 75 at 50.[9]

---

[9] Magistrate Judge Katz also notes that there may not be a sufficiently alleged protected activity, though he avoids recommending summary judgment on the issue because Defendant Jones did not argue a lack of protected activity.  The Court notes, however, that pursuant to *Dolan v. Connolly*,

In his affidavit, Mr. Herne, another incarcerated individual at Great Meadow, attests to asking Defendant Jones why she wrote Plaintiff an MBR, and Mr. Herne asserts that Defendant Jones responded by stating it was "because Henderson likes to write grievances against my officers." Dkt. No. 67-2 at 13. Thus, Plaintiff relies not just on his own self-serving statements and/or hearsay[10], but also provides additional evidentiary support for his claim against Defendant Jones. It is not this Court's role to weigh the evidence, only to determine whether an issue of material fact exists. As a result, the Court must deny summary judgment pending the exhaustion hearing, and the Court finds no clear error in the recommendation as to this claim.

### C. Plaintiff's Excessive Force and Failure to Protect Claims

Next, Magistrate Judge Katz recommended dismissal of Plaintiff's excessive force/failure to protect claim against Defendant Popp on the basis that Plaintiff relies solely on his own self-serving statements and hearsay, and that even if Plaintiff's version of events were true, Defendant Popp merely "spread[] [] rumors" which "alone does not amount to a constitutional violation." *Id.* at 54-55 (citing *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) and *Williams v. Muller*, No. 98-CV-2001, 2001 WL 936297, at *4 (S.D.N.Y. Aug. 17, 2001)). The Court finds no clear error in this analysis based on Plaintiff's failure to present any admissible evidence beyond his own self-serving statements. *See also Adler v. Penn Cred. Corp.*, No. 19-CV-7084 (KMK), 2022 WL 744031, at *9 (S.D.N.Y. Mar. 11, 2022) ("a non[-]moving party's self -serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment") (internal quotation marks and

794 F.3d 290, 295 (2d Cir. 2015), this Court should not adopt an "unduly restrictive view" of the protected activity, and that Plaintiff's demonstrated history of filing grievances in the evidence likely suffices to create an issue of material fact on that element of the claim.

[10] Though Mr. Herne relays a statement allegedly made by Defendant Jones, the party-opponent hearsay exception applies. *See* Federal Rules of Evidence Rule 801(d)(2).

citation omitted); *Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009) (summary

order) ("[T]he only 'evidence' cited in [the] plaintiffs' brief is their own self-serving testimony . .

. . Such evidence is insufficient to defeat summary judgment.").  However, the Court notes that

where rumors are alleged to have led to actual violence against an incarcerated individual, as

alleged here, such allegations may be sufficient to constitute an adverse action, and if Plaintiff had

supported those allegations with evidence, the claim may have survived.  *See Williams*, 2001 WL

936297, at *4 (finding important that "no physical harm occurred"); *Gill v. Calescibetta*, No. 9:00–

CV–1553 (GTS/DEP), 2009 WL 890661, at *12 (N.D.N.Y. Mar. 31, 2009) ("A statement uttered

by a prison official, in retaliation for protected activity, reasonably calculated and intended to incite

inmates, prisoners, or fellow corrections workers to retaliate against an inmate can form the basis

for a cognizable retaliation claim[.]").

### D.  Plaintiff's Procedural Due Process Claims Against Defendant Reynolds

Magistrate Judge Katz recommended dismissal of the procedural due process claim against

Defendant Reynolds.  Dkt. No. 75 at 60.  Plaintiff argued that Defendant Reynolds was not

empowered to remove him from his job in the library under the applicable regulations.  Dkt. No.

74 at 2.  The Court finds no clear error in the Report-Recommendation's analysis, including

Magistrate Judge Katz's determination that the record evidence, including the sworn declarations

of Defendant Reynolds and Lisa Stickney, reveals no material issue of fact upon which a

reasonable juror could find in Plaintiff's favor.  However, the Court also notes that "[a] procedural

due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected

liberty or property interest, and (2) deprivation of that interest without constitutionally adequate

process."  *Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019).  Magistrate Judge Katz correctly

noted that Plaintiff has no protectable liberty interest in the library position but appears to consider

Plaintiff's claim to be independently viable without such a right had Plaintiff succeeded in marshaling admissible evidence. *See* Dkt. No. 75 at 58 n. 17 (citing *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987)). But a procedural due process claim must be based on inadequate procedures *protecting an actionable interest,* and thus, Plaintiff's claim must alternatively be dismissed for lack of an actionable liberty interest.[11]  *See Bangs v. Smith*, 84 F.4th 87, 97 (2d Cir. 2023) (first assessing whether a plaintiff has a liberty interest before determining whether the procedures employed were constitutionally adequate); *Armand v. Osborne*, No. 11–CV–4182 (NGG)(CLP), 2014 WL 723381, at *6 (E.D.N.Y. 2014) ("A prison inmate has no constitutional right to any specific prison job and has no recognized expectation in keeping a particular prison job.") (internal quotation marks and citation omitted).

Next, the Report-Recommendation also recommended dismissal of Plaintiff's procedural due process claim against Defendant Reynolds based on the procedures employed in the hearing pursuant to which Plaintiff was ultimately removed from his library job. Dkt. No. 75 at 58. Magistrate Judge Katz found that the record demonstrates that there is no triable issue of fact because Plaintiff was provided all of the process required by law. *Id.* (citing *Wolff v. McDonnell*, 418 US 539, 564-69 (1974)). The Court finds no clear error in this determination, and also

---

[11] To the extent this determination contradicts Judge Kahn's decision upon initial review, Dkt. No. 4 at 33 (finding a liberty interest), the Court notes that Judge Kahn conducted a preliminary view of the allegations, and at this stage, the Court must subject Plaintiff's claims to greater scrutiny. Judge Kahn found a liberty interest because the allegations indicated that the deprivation of the library job by a hearing officer may have been "unusually onerous" under the circumstances given the hearing officer's apparent lack of authority to make such a removal. *Id.* (citing *Madison v. Crowley*, No. 19-CV-6554, 2020 WL 2542636, at *10 (W.D.N.Y. May 19, 2020)). But this analysis conflates the procedures designed to protect a right (the regulations governing how and by whom an incarcerated individual can be removed from a discretionary library job) with the liberty interest itself (Plaintiff's interest in keeping the discretionary job). A rule which "merely establishes procedural requirements" like the rule barring certain officers from removing incarcerated individuals from the library program, "does not thereby create a liberty interest[.]" *Rodriguez v. McLoughlin*, 214 F.3d 328, 339 (2d Cir. 2000).

dismisses for the lack of an actionable liberty interest, as discussed above.

### E.  Plaintiff's Substantive Due Process Claims

The Report-Recommendation next found that the substantive due process claims against Defendants McLenithan, Guyette, Fraser, Hamel, Popp, Reynolds, and Jones "are entirely duplicative of his First Amendment retaliation claims," and therefore recommended their dismissal.  Dkt. No. 75 at 62 (citing *Monko v. Cusack*, No. 9:11-CV-1218 (GTS/TWD), 2013 WL 5441724, at *3 (N.D.N.Y. Sept. 27, 2013)).  The Court finds no clear error in this analysis.

The Report-Recommendation also recommended dismissal of the substantive due process claims against Defendants Reynolds and Scarlotta because such claims were duplicative of Plaintiff's procedural due process claims against those Defendants.  *Id.*  Again, the Court finds no clear error in this analysis.

### F.  Plaintiff's Conspiracy Claims

Magistrate Judge Katz next found that Plaintiff's conspiracy claims against Defendants Guyette, Popp, Hamel, Fraser, and Reynolds must be dismissed pursuant to the intracorporate conspiracy doctrine.  *Id.* at 63 (citing *Livingston v. Hoofagle*, No. 9:19-CV-0353 (GLS/CFH), 2019 WL 7500501, at *16 (N.D.N.Y. Nov. 8, 2019)).  The Court finds no clear error in this analysis. *See also Vega v. Artus*, 610 F. Supp. 2d 185, 205-06 (N.D.N.Y. 2009) (dismissing conspiracy claim pursuant to intracorporate conspiracy doctrine where all of the defendants were DOCCS employees acting within the scope of their employment); *Williams v. Korines*, No. 9:16-CV-1157 (FJS/TWD), 2018 WL 4521204, at *5 n.1 (N.D.N.Y. Sept. 21, 2018) (concluding that the intracorporate conspiracy doctrine applied to an incarcerated individual's Section 1983 conspiracy claim); *Richard v. Dignean*, 126 F. Supp. 3d 334, 338-39 (W.D.N.Y. 2015) (finding intracorporate conspiracy doctrine applicable to claim by incarcerated individual against prison officials for

discrimination against him based on race and religion); *Toliver v. Fischer*, No. 9:12-CV-00077 (MAD/ATB), 2015 WL 403133, at *22 (N.D.N.Y. Jan. 29, 2015) (dismissing conspiracy claim by incarcerated individual against DOCCS personnel under the intracorporate conspiracy doctrine).

### G.  Plaintiff's Intentional Infliction of Emotional Distress Claims

Next, Magistrate Judge Katz recommended dismissal of Plaintiff's intentional infliction of emotional distress claims against Defendants McLenithan, Guyette, Popp, Hamel, Fraser, and Jones pursuant to Corrections Law § 24, which prohibits civil actions "against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of the duties by such officer or employee."  Dkt. No. 75 at 65.  The Court finds no clear error in this analysis. *See Ierardi v. Sisco*, 119 F.3d 183, 186-86 (2d Cir. 1997) ("It is well settled that Section 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute.").

### H.  Qualified Immunity

The Report-Recommendation found that the issue of qualified immunity cannot be resolved as to the sole remaining retaliation claim against Defendant Jones because "there is an issue of fact regarding whether there is a lack of retaliatory causation[.]"  Dkt. No. 75 at 66 (citing *Moreno v. Ricks*, No. 9:02-CV-1435 (PAM/GJD), 2006 WL 2333961, at *2 (N.D.N.Y. Aug. 9, 2006)).  The Court finds no clear error in this analysis.

### I.  Compensatory Damages

Finally, given that the Court has adopted the Report-Recommendation's suggestions to dismiss all the substantive claims except the retaliation claim against Defendant Jones, the Court need only review the Report-Recommendation's findings regarding the availability of

compensatory damages for that claim. The Report-Recommendation recommended finding that compensatory damages for that claim are not available pursuant to the PLRA, which provides that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C §1997e(e). The Court finds no clear error in this finding because the sole allegations of physical injury do not relate to the allegations against Defendant Jones.[12]

Having reviewed the Report-Recommendation for clear error, and found none, the Court adopts the recommendations in the Report-Recommendation with the additional reasoning provided herein.[13]

IV.    **CONCLUSION**

Accordingly, the Court hereby

**ORDERS** that the recommendations in the Report-Recommendation, Dkt. No. 75, are **ADOPTED** for the reasons stated herein; and the Court further

**ORDERS** that Defendants' motion for summary judgment, Dkt. No. 59, is **GRANTED** in part and **DENIED** in part. The motion for summary judgment is **DENIED** as to the retaliation claim against Defendant Jones and **GRANTED** as to all other claims; and the Court further

---

[12] This finding does not preclude Plaintiff's remaining claim against Defendant Jones in its entirety, however. The PLRA "only limits the recovery for emotional and mental injury in the absence of physical injuries; it does not bar a plaintiff from bringing a lawsuit or from obtaining nominal or punitive damages, or injunctive and declaratory relief." *Lee-Edwards v. New York City Dep't of Correction*, 16-cv-0725(ENV)(MDG), 2016 WL 3461237, at *2 (E.D.N.Y. June 21, 2016) (quoting *Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002)). Here, Plaintiff specifically requests punitive damages, declaratory relief, and a permanent injunction "against the false misbehavior report[] written by Defendant[] . . . Jones" and seeks an order removing those reports from his record. Dkt. No. 20 at 10.

[13] The Court is also in receipt of Plaintiff's letter motion requesting appointment of counsel. *See* Dkt. No. 68. Plaintiff will be appointed counsel for the purposes of the exhaustion hearing detailed in this order. Should this case proceed to trial, the Court will determine whether counsel should be appointed for purposes of trial as well.

**ORDERS** that an exhaustion hearing be scheduled to determine if Plaintiff has exhausted his administrative remedies related to the sole remaining claim prior to commencing this action; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.[14]

**IT IS SO ORDERED.**

DATED:       March 28, 2025
              Albany, New York

Anne M. Nardacci
U.S. District Judge

---

[14] The Clerk shall also provide Plaintiff with copies of all unreported decisions herein.